IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TOMMY LEE CHRISTMAS, JR. ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 03-CV-873-TCK-PJC |
| ) | |
| MIKE ADDISON, Warden, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

Before the Court is Petitioner's 28 U.S.C. § 2254 petition for writ of habeas corpus and supporting brief (Dkt. # 4). Petitioner challenges his conviction entered in Tulsa County District Court, Case No. CF-2001-650. Respondent has filed a response (Dkt. # 6) to the petition, and has provided the state court records (Dkt. ## 7,8) necessary for adjudication of Petitioner's claims. Petitioner has filed a reply (Dkt. # 9) to Respondent's response, and provided supplemental argument and authorities for consideration (Dkt. # 10). For the reasons discussed below, the Court finds the petition should be denied.

*BACKGROUND*

On February 1, 2001, Petitioner was charged in Tulsa County District Court, Case No. CF-01-650 with Robbery by Force (count 1), Assault and Battery with a Dangerous Weapon (counts 2 and 3), Kidnapping (count 4), Possession of a Stolen Vehicle (count 5), Leaving Scene of an Accident Resulting in Injury (count 6), and Eluding an Officer (count 7). See Dkt. # 8, Ex. E attachment.

On March 1, 2001, Petitioner, represented by attorney Darrell Bolton, filed an application for determination of competency. A competency hearing was held before the state district court on

September 25, 2001. At the conclusion of the hearing, the trial judge found Petitioner "to be incompetent but capable of possibly achieving competency within a reasonable period." Dkt. # 7, Tr. of Competency Hr'g at 50. The court directed that Petitioner be committed to Eastern State Hospital for examination and treatment. Id.

A second competency hearing was held on March 5, 2002. At the conclusion of the hearing, the trial judge found Petitioner competent to stand trial. Dkt. # 7, Tr. of March 5, 2002, Hr'g at 37. Petitioner filed a motion to reconsider on April 2, 2002, but the trial judge denied the motion. See Dkt. # 8, Ex. E attachment. Nothing in the record provided to this Court reveals that Petitioner appealed the competency ruling by the trial judge.

On September 4, 2002, Petitioner filed another application for determination of competency. After hearing arguments from Petitioner's counsel on September 9, 2002, the trial judge concluded that no new evidence was presented which would justify another hearing to determine competency. Dkt. # 7, Tr. of Sept. 9, 2002, Hr'g.

On October 14, 2002, Petitioner entered a blind plea of no contest to counts 1, 2, 3, 4, and 7. Counts 5 and 6 were dismissed. On November 21, 2002, the state district court found Petitioner guilty. He was sentenced to twenty-five years imprisonment on each of counts 1, 3, and 4; thirty-five years on count 2; and twenty years on count 7. The convictions were to be served consecutively. Dkt. # 7, Tr. of Sentencing at 44-5.

Petitioner filed a motion to withdraw plea on November 27, 2002. Petitioner's motion was heard on December 23, 2002, and January 21, 2003. He was represented by the Tulsa County Public Defender's office in these proceedings because attorney Bolton was needed as a witness to testify about Petitioner's competency at the time he entered his plea. At the conclusion of the hearing, the

trial court denied the motion to withdraw plea. See Dkt. # 7, Tr. of Hr'g at 71.

Petitioner filed a *certiorari* appeal to the Oklahoma Court of Criminal Appeals ("OCCA") challenging the denial of his application to withdraw plea. The OCCA denied *certiorari* by summary opinion filed December 3, 2003. Dkt. # 8, Ex. C. Petitioner raised the following propositions of error in his petition for *writ of certiorari*:

1. The waiver and plea were not taken in accordance with the standards required under the United States Constitution and King v. State, 553 P.2d 529 (Okla. Crim. App. 1976).

2. The district court did not adequately secure the Petitioner's knowledge of the range of punishment.

3. A factual basis for the plea of guilty was not evinced in the record.

4. The plea was not knowingly, intelligently, or voluntarily entered because of ineffective assistance of counsel.

5. The Petitioner was denied effective counsel during the plea and waiver phase because counsel misled Petitioner on matters that were material to his decision to accept the plea bargain.

6, The minimum requirements for determination that the Petitioner was competent and that there was factual basis for guilty plea had not been satisfied.

Dkt. # 8, Ex. E. However, in his supporting brief (Dkt. # 8, Ex. F), the only proposition argued by Petitioner was that his plea was not knowingly and voluntarily entered. The OCCA did not address the remaining issues identified in the petition, but specifically found that Petitioner's plea was entered into knowingly and voluntarily. Dkt. # 8, Ex. C at 2.

Petitioner filed his federal habeas corpus petition on January 29, 2004 (Dkt. # 4), asserting that his plea was not knowingly and voluntarily entered. Dkt. # 4 at 5. He argues that the trial court erred in finding him competent and in denying his September 4, 2002, application for re-evaluation

3

of his competency because he was actually incompetent and highly medicated at the time he entered his plea. In response to the claims asserted in the petition, Respondent argues that Petitioner's claims lack merit and habeas corpus relief should be denied. Dkt. # 6.

## *ANALYSIS*

### A.  Exhaustion/Evidentiary Hearing

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner fairly presented the substance of his claim to the OCCA on *certiorari* appeal. Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Michael Williams v. Taylor, 529 U.S. 420 (2000).

### B.  Claims adjudicated by the OCCA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a state court has adjudicated a claim on the merits, a petitioner may obtain federal habeas relief only if the state decision "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). In this case, the OCCA adjudicated Petitioner's claim concerning his allegedly involuntary plea of no contest on *certiorari* appeal and found that Petitioner's "pleas were knowingly and voluntarily entered," and the "trial court did not abuse its discretion by denying Petitioner's request to withdraw his plea." See Dkt. # 8, Exh. C at 2. Therefore, Petitioner's claim

4

in this habeas corpus proceeding shall be reviewed pursuant to § 2254(d).

*1. Competency*

Petitioner asserts that he was incompetent to enter a plea, and the trial court erred in finding him competent. He also claims the court erred in refusing to reconsider the competency determination.

> The law of competency is well-settled. "[T]he criminal trial of an incompetent defendant violates due process. This prohibition is fundamental to an adversary system of justice." McGregor v. Gibson, 248 F.3d 946, 951 (10th Cir. 2001) (quotations and citation omitted). The test for determining competency to stand trial is this: "[t]he trier of fact must consider 'whether [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him.'" Id. at 952 (quoting Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). The standard of competence to enter a guilty plea is identical. Godinez v. Moran, 509 U.S. 389, 399, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993).

Allen v. Mullin, 368 F.3d 1220, 1238-39 (10th Cir. 2004). Competency claims may be based on violations of both procedural and substantive due process, but the standards of proof for procedural and substantive claims differ. Id. at 1239. A procedural competency claim challenges the adequacy of procedures used to evaluate competency while a substantive competency claim alleges that an individual was tried and convicted while, in fact, incompetent. Id. The burden of proof on a substantive claim of incompetency is higher than that required on a procedural claim. To succeed on a procedural competency claim, a defendant "must raise a bona fide doubt regarding his competency to stand trial. . . ." Id. This requires a demonstration that "a reasonable judge should have doubted" the defendant's competency. McGregor, 248 F.3d at 954. It does not require proof of actual incompetency. Allen, 368 F.3d at 1239. A substantive competency claim, on the other hand, requires the higher standard of proof of incompetency by a preponderance of the evidence.

Cooper v. Oklahoma, 517 U.S. 348, 368- 69 (1996).

In his reply filed in the instant case, Petitioner argues that his competency hearings were procedurally inadequate because (1) he never received a neurological work up to prove his incompetency, (2) Eastern State Hospital was biased against him from the onset, and (3) Dr. Christopher, from Eastern State Hospital, was biased to the point that she falsified her evaluation of the Petitioner to the court. Dkt. # 9 at 7. In order to prevail on a procedural due process claim, Petitioner must establish "that the state trial judge ignored facts raising a bona fide doubt regarding the petitioner's competency to stand trial." Walker v. Atty. Gen., 167 F.3d 1339, 1343 (10th Cir. 1999). To the extent Petitioner claims his Fourteenth Amendment rights were violated due to a procedural due process error, the Court finds the claim is without merit.

Under Oklahoma law in effect at the time of Petitioner's criminal proceedings, upon application of the defendant or the state, a trial court was required to conduct a competency hearing in cases where the defendant had sought, and received, a mental competency evaluation. Okla. Stat. tit. 22, § 1175.4 (2000). Also, a trial court was required by Oklahoma law to hold a competency hearing to determine if competency had been achieved where a finding of incompetency had been previously made.  Okla. Stat. tit. 22, § 1175.8 (1991).  The OCCA has held that "once an accused has been adjudged 'incompetent, but capable of achieving competency within a reasonable period of time' under section 1175.7, the hearing that must then be held under section 1175.8 is the equivalent of a section 1175.4 post-examination competency hearing." Lillard v. State, 852 P.2d 756, 757 (Okla. Crim. App. 1993).

In this case, the records before the Court reflect that a court appointed general practice psychologist, Dr. Reese Price, examined Petitioner and testified at the competency hearing on

September 25, 2001. He testified that Petitioner was mildly retarded with an IQ of 58. Dkt. # 7, Tr. of Comp. Hrg at 10-11. He opined that Petitioner could not rationally assist defense counsel with his defense. Id. at 42. Based upon Dr. Reese's testimony, the trial court found Petitioner incompetent, but capable of possibly achieving competency. Id. at 50. The trial court ordered further evaluation of Petitioner at Eastern State Hospital. Id.

At the second competency hearing held in March, 2002, Dr. Samina Christopher, a forensic psychologist, testified that she believed Petitioner was malingering and was competent. Dr. Christopher based her opinion on Petitioner's school records,[1] interviews with persons who interacted with Petitioner, and the results of the Test of Memory Malingering, administered to Petitioner. Dr. Reese also testified at this hearing and acknowledged that he had not administered any tests to determine if Petitioner was malingering. Based upon the testimony and evidence presented at the second hearing, the trial court found Petitioner competent to stand trial. Dkt. # 7, Tr. of Comp. Hr'g held on March 5, 2002, at 35-37.

In a federal habeas proceeding, the "burden is on the petitioner to prove, by a preponderance of the evidence, that he was incompetent in fact at the time of the plea." Miles v. Dorsey, 61 F.3d 1459, 1472 (10th Cir. 1995) (quoting Bouchillon v. Collins, 907 F.2d 589, 592 (5th Cir. 1990)). The Tenth Circuit found in Miles, that even a history of mental problems, low intelligence, psychotropic medication, and substance abuse did not establish that Mr. Miles was incompetent to plea. Id. As in Miles, expert testimony to support both sides of the mental competency issue was presented at

---

[1] Contrary to Petitioner's representation to staff at Eastern State Hospital that he had been in special education classes, Dr. Christopher learned from Petitioner's school records that he had graduated from high school and was accepted to the University of Tulsa. His standardized test scores in the records revealed that his IQ was in the low average range, and he was never in special education classes.

Petitioner's second competency hearing. Also, as in Miles, a forensic psychologist testified that tests administered to Petitioner indicated intentional malingering. Although the evidence of Petitioner's competence was mixed, based upon this Court's review of the record, Petitioner has failed to demonstrate, by a preponderance of the evidence, that he was incompetent and that the finding of competence by the state court was, therefore, erroneous. Petitioner has failed to meet his burden that the trial judge should have doubted Petitioner's competency, or that there was a bona fide doubt regarding his competency. Accordingly, this Court finds that Petitioner was not denied procedural due process by the state court proceedings in which he was ultimately determined to be competent.

Petitioner's claim of substantive due process is also without merit. In order to state a valid substantive due process competency claim, Petitioner must show he was, in fact, mentally incompetent. Smith v. Mullin, 379 F.3d 919, 932 (10th Cir. 2004). Competency is a factual issue. See Thompson v. Keohane, 516 U.S. 99, 111 (1995) (citing Maggio v. Fulford, 462 U.S. 111, 117 (1983) (*per curiam*)).  Therefore, this Court must presume the state court's competency finding was correct, absent clear and convincing evidence that Petitioner was in fact incompetent at the time of his trial.  See 28 U.S.C. § 2254(e)(1); Wallace v. Ward, 191 F.3d 1235, 1243-44 (10th Cir. 1999). Petitioner has failed to make the necessary showing. Having determined that the trial judge did not err in finding Petitioner competent, this Court concludes that Petitioner had sufficient ability to consult with his lawyer with a reasonable degree of rational understanding, and had a rational as well as factual understanding of the proceedings against him. See  Dusky v. United States, 362 U.S. 402 (1960). He has not presented clear and convincing evidence that the state court's finding was incorrect.

*2. Plea was not knowing and voluntary*

Petitioner asserts that his attorney told him that his sentences would "run together" if he plead guilty, and that he was highly medicated at the time he entered his plea. As a consequence, Petitioner claims his plea was not knowing and voluntary.

> "[I]n addition to determining that a defendant who seeks to plead guilty . . . is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary." Godinez, 509 U.S. at 400. The competency inquiry focuses on a defendant's ability to understand the proceedings; the "knowing and voluntary" inquiry focuses on whether he in fact did understand the proceedings. Id. at 401 n.12.

Allen v. Mullin, 368 F.3d 1220, 1240 (10th Cir. 2004). The record provided by Respondent contradict's Petitioner's allegation. Respondent provided a copy of the "Findings of Fact - Acceptance of Plea" filed in the district court in Petitioner's case (Dkt. # 8, Ex. B). On the first page of the form, Petitioner affirmed that he could read and understand the form. Id. at ¶ 4. He denied that he was taking any medications or substances which affected his ability to understand the proceedings or that he had been prescribed any medication that he should have been taking, but was not taking. Id. at ¶¶ 5 and 6. In paragraph 6, he explained that he was taking "doxipin [sic] 300 mg. & lithium 900 mg daily," but that his last dose was 8 p.m. the night before he signed the document. Id. at ¶ 6. Petitioner also affirmed that he understood the nature and consequences of the proceeding, had talked over the charges with his lawyer, had advised his lawyer regarding any available defenses, and had his lawyer's advice. Id. at ¶¶ 8 and 16. Petitioner swore under oath that he had read, understood and completed the form, that his answers were true and correct, and that he understood he could be prosecuted for perjury if he had made false statements to the court. Id. at ¶ 28. Notably, he answered "No" to the question, "Is there a plea agreement?" Id. at ¶ 19. In answer to the question, "What is your understanding of the plea agreement?", Petitioner wrote, "is no plea agreement I plea no contest as a blind plea to the court putting myself in the hands of Judge Gillert."

9

<u>Id.</u>

In addition to the form, the trial court relied on Petitioner's testimony at the plea hearing held on October 14, 2002. The following questions and answers are in the record:

| | |
|---|---|
| COURT: | Mr. Christmas, you understand that you're telling me by that form and your signature on it, that you, with the assistance of your attorney, Mr. Bolton, have completed it, you understand it and it's true and correct; is that right? |
| WITNESS: | Yes, sir. |
| COURT: | Is that right? |
| WITNESS: | Yes, sir. |
| COURT: | Is there anything affecting your ability to understand what's going on today? |
| WITNESS: | No. |
| COURT: | You know, then, that you've got certain rights. They're listed for you on the form. Do you understand each one of those rights? |
| WITNESS: | (Nods head.) |
| COURT: | And you understand that by entering these pleas of no contest today, you're going to give those rights up? |
| WITNESS: | Yes, Your Honor. |
| COURT: | There is no plea recommendation, and you're entering what is called a blind plea. And what that means is that if I thought it was the right thing to do, you could receive the maximum of those punishments that are in that box up there. Is that your understanding? |
| WITNESS: | Yes, sir. |
| COURT: | Is there anything about that that's unclear to you? |
| WITNESS: | No, sir. |
| COURT: | Has anybody made you any promises, threatened you in some way, told you a story to get you to enter these pleas of no contest today? |

      WITNESS:    No.

See Dkt. # 7, Tr. of Plea Hr'g held on October 14, 2002, at 3-4. The trial court went on to remind Petitioner of the underlying facts of the crimes to which he was pleading no contest. Petitioner indicated that he understood the allegations and that he was entering a plea of no contest to those allegations. Id. at 4-5.

      Based on Petitioner's responses to the questions on the form and his testimony at the plea hearing, the trial court judge found that Petitioner's plea of guilty was knowingly and voluntarily entered, and that Petitioner was competent for the purpose of the plea hearing. Id. at 5; Dkt. # 8, Ex. B at ¶ 32. This Court must give a presumption of correctness to these findings. 28 U.S.C. § 2254(e)(1)[2]; see also Wallace v. Ward, 191 F.3d 1235, 1244 (10th Cir. 1999) (applying § 2254(e)(1) to a finding of competency); Bryson v. Ward, 187 F.3d 1193, 1201-02 (10th Cir. 1999) (same). Despite Petitioner's claims now to the contrary, the record demonstrates that Petitioner understood the proceedings and the questions asked of him. This Court will not undo what, in hindsight, may seem to Petitioner to have been an unwise decision to plead no contest to five felony counts.

      Although Petitioner asserts that he was "highly medicated" when he entered his plea, the record does not support his contention that the plea was not knowing and voluntary. Nothing in the transcript from Petitioner's plea hearing supports Petitioner's contention. Significantly, even the medical doctor who testified regarding the effects of dioxipin and lithium at Petitioner's hearing on

---

[2] Section 2254(e)(1) provides as follows:

      In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

the motion to withdraw plea could not conclude that these medications rendered Petitioner confused on the date of his plea hearing. See Dkt. # 7, Tr. Motion to Withdraw Guilty Plea Hr'g, at 58-9. Finally, the attorney who represented Petitioner at the plea hearing testified that it was his opinion at the time of entering the plea that Petitioner understood what was going on. Id. at 17. "On October 14th, I thought he was [able to intelligently plead]. I thought he understood what we were doing and what was going on." Id. at 12. It wasn't until after the sentencing that Mr. Bolton concluded his client may not have knowingly understood what was going on the date he entered his plea. Id. at 13. Although it is clear that Petitioner was dissatisfied after he learned on November 21, 2002, that his sentences were to be served consecutively, rather than concurrently, this Court is not convinced that any medication in Petitioner's system on October 14, 2002, affected his ability to enter his no contest plea knowingly and voluntarily.

Further, his allegation that his plea was not "knowing and voluntary" because his attorney had indicated to him the judge would sentence him to concurrent sentences is contradicted by the record. In contrast to affidavits provided by Petitioner's mother and aunt (Dkt. # 4 attachments), the affidavit of Petitioner's attorney indicates that the trial judge's order of consecutive sentences was "not concurrent as argued." The attorney also testified that no one ever promised Petitioner concurrent sentences. Dkt. # 7, Tr. Motion to Withdraw Guilty Plea Hr'g, at 18. As noted above, Petitioner also represented to the trial court when he entered his plea that no promises had been made to him regarding his blind no contest plea. Significantly, Petitioner testified at the hearing on his motion to withdraw plea as follows:

> Q:  You're telling this court that Darrell Bolton promised you that they would run at the same; is that correct?
>
> A.  He didn't say I promise. I don't think he said I promise. He just said that they will

12

> all run together. And that's -- that's what -- my mom said she talked to him. And, I mean, I talked to her several times. She always comes up and sees me, and he comes up and sees me. And he said that this would be the best thing because they'll run together.
>
> Q: So nobody ever promised you that; is that correct?
>
> A: Well, he didn't promise me, no. He just --

Dkt. # 7, Tr. of Mot. to Withdraw Guilty Plea at 35.

The record simply does not support Petitioner's assertion that his plea was not knowingly and voluntarily entered.

> An attorney's erroneous sentence estimate or prediction of parole does not render a plea unknowingly made. Laycock, 880 F.2d at 1186; Self v. Blackburn, 751 F.2d 789, 793 (5th Cir. 1985). A defendant's subjective understanding that he will serve less than one-half of his sentence, if not based upon any promise made by the defense attorney, the prosecutor, or the court, will not undermine the constitutionality of the plea or raise a question of whether the state breached its end of a plea bargain. Laycock, 880 F.2d at 1186; Bonvillain v. Blackburn, 780 F.2d 1248, 1252 (5th Cir.), cert. denied, 476 U.S. 1143, 106 S.Ct. 2253, 90 L.Ed.2d 699 (1986); Hall v. Maggio, 697 F.2d 641, 643 (5th Cir. 1983) (holding the defendant's understanding that a life sentence was really only ten and one-half years, which he based upon "common knowledge," was not a promise that could render the plea involuntarily entered).

Cunningham v. Diesslin, 92 F.3d 1054, 1061 (10th Cir. 1996). Petitioner admitted, as indicated above, that his attorney did not promise that his sentences would be concurrent. As a result, the Court concludes that Petitioner's allegations are insufficient to overcome the presumption of correctness afforded the trial court's finding that his plea was knowingly and voluntarily entered. He has failed to point to clear and convincing evidence rebutting the presumption of correctness afforded the state trial court's finding. 28 U.S.C. § 2254(e)(1). Nor was the state court's decision based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(e)(2). Habeas corpus relief shall be denied. 28 U.S.C. § 2254.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that** the petition for a writ of habeas corpus (Dkt. # 4) is **denied**. A separate Judgment shall be entered in this case.

SO ORDERED THIS 30th day of March, 2007.

*Terence Kern*

TERENCE KERN
UNITED STATES DISTRICT JUDGE